No. 21973.

JACK BEARDSHEAR, ADMINISTRATOR OF THE ESTATE OF
WILLIAM M. BEARDSHEAR, DECEASED *v.*
JESSIE C. BEARDSHEAR.
(432 P.2d 235)

Decided August 8, 1967.

334

JOHN T. DUGAN, for plaintiff in error.

SHELDON and NORDMARK, JAMES T. BAYER, DANIEL H. POLSBY, for defendant in error.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

PLAINTIFF in error, Jack Beardshear, as Administrator of the Estate of William M. Beardshear, deceased, brings writ of error from a judgment of the Probate Court of the City and County of Denver, allowing a claim of Jessie C. Beardshear, defendant in error here, in the amount of $1552.50 for attorneys' fees incurred by her while she was acting as Executrix of the aforementioned estate.

We are required by an unbroken line of authority in this state to view the evidence in the light most favorable to the prevailing party in the trial court. Viewing the record in that perspective, it appears that William M. Beardshear sustained a cerebral vascular accident in 1952 and suffered a resulting paralysis. At times thereafter he was unable to speak or was hard to understand. On May 18, 1955, at the office of his attorney, who had known him for many years, he made a will in which he left his entire estate to Jessie C. Beardshear, who was his second wife. His children by his first wife, who were all adults, were made contingent beneficiaries.

Some two years later, William Beardshear died and his first wife, Mame L. Beardshear, filed for letters of administration as a creditor and the letters were granted. Several months later, Jessie Beardshear filed the will for probate and the children of William thereupon filed a caveat. They presented no evidence at the probate court hearing on the admission of the will and letters were issued to Jessie.

Thereafter, appeal was taken to the district court

where, after a trial by a jury, the will was held invalid and the matter returned to the probate court for further proceedings. Jessie was thereupon removed as Executrix and a new Administrator was appointed. Jessie then filed her claim for attorneys' fees incurred by her in contesting the caveat and in administering the estate while she was Executrix.

At the trial, the Administrator contended that Jessie did not act in good faith in seeking probate of the will, and also sought damages by way of counterclaim for expenses incurred in contesting the will. He requested a jury trial, which request the trial court denied.

Plaintiff in error contends here that (1) as a matter of law, it was "bad faith" for Jessie to present the will for probate under the circumstances of this case, and (2) that it was error for the trial court to deny a jury trial. We do not agree.

C.R.S. 1963, 153-5-17 provides that an executor, when acting "in good faith" to establish a will shall be entitled, at the expense of the estate, to employ counsel and incur such expense as necessary to prove or *attempt* to prove the will. It is clear that it is not necessary that the will be proved, but only that the attempt to prove it be in good faith. What is "good faith" is a factual question to be determined by the circumstances of each case. *Williams v. Hankins*, 79 Colo. 237, 245 P. 483. Hospitalizations, strokes, even adjudications of mental incompetency do not operate as a conclusive bar to the making of a valid will. *Estate of McCrone*, 106 Colo. 69, 101 P.2d 25. They are only evidentiary matters which go to the ultimate issue of competency. Jessie here offered testimony of the attorney who prepared the will and who had known William Beardshear for many years. That evidence was to the effect that Beardshear understood what he was doing when he signed the will and was competent to make the will. The trial court held that in these circumstances Jessie acted in good faith

in presenting the will for probate and in contesting the caveat.

 Bad faith will not be imputed as a matter of law simply because a jury finds the will to be invalid. To hold otherwise, would be to place every executor in jeopardy who would dare to present a will where at any time there had been any question of testamentary capacity. "Bad faith" was a disputed issue of fact and we cannot say, as a matter of law, that on the record here the trial court erred in its disposition of that issue.

██ There was also sufficient evidence in the record upon which the trial court could enter its judgment for attorneys' fees in the amount it did.

██ The Administrator's objection that he was not permitted a jury trial in this matter also is not well taken. We have held that there is no constitutional right to a jury trial in probate proceedings. *Miller v. O'Brien,* 75 Colo. 117, 223 P. 1088. Probate is, of course, a special statutory procedure and we must, therefore, look to the statute to determine whether a jury trial may be had at the request of one of the parties.

 C.R.S. 1963, 153-5-17(2), under which this claim was presented, provides that the *amount* and *necessity* of the expenses of counsel incurred in the attempt to prove a will shall be subject to the *approval* of the county court. Juries do not give approvals, that function is reserved for judges. It is clear that the legislature intended such matters to be within the province of the judge and not the jury.

The judgment is affirmed.

MR. CHIEF JUSTICE MOORE not participating.